Howard BIRDWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–86–095–CR.

Court of Appeals of Texas,
Texarkana.

May 19, 1987.

Rehearing Denied June 16, 1987.

Lynn Cooksey, Texarkana, for appellant.

John F. Miller, Jr., Dist. Atty., Texarkana, for appellee.

BLEIL, Justice.

Howard Birdwell appeals his murder conviction. He complains that the court's charge to the jury failed to properly place the burden on the State of proving the absence of sudden passion and that the evidence is insufficient to support his conviction. We disagree and affirm his conviction.

■ Birdwell contends that the trial court erred in overruling his objection to the court's charge because the trial court failed to place the burden of proving the absence of the element of sudden passion on the State in the paragraph of the charge which applied the law of murder to the facts of the case. Once the issue of sudden passion has been raised, not only is the burden of proving the lack of sudden passion placed on the prosecution, but also this burden must be placed in the paragraph of the charge applying the law of murder to the facts of the case. *Cobarrubio v. State,* 675 S.W.2d 749, 751 (Tex.Crim.App.1983). In *Cobarrubio,* the charge provided:

"... [If] you believe from the evidence beyond a reasonable doubt, that on or about the 23rd day of May, 1978, in the County of Lubbock and State of Texas, as alleged in the indictment, the defendant, JOE MARTINEZ COBARRUBIO, did then and there intentionally and knowingly cause the death of an individual, Javier Gutierrez, by shooting him with a gun, *then you will find* the defendant, JOE MARTINEZ COBARRUBIO, *guilty of murder* as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to whether defendant is guilty of murder, *then* you will *acquit* him of murder *and* next *consider* whether he is guilty of involuntary manslaughter."

Later in that charge to the jury the trial court instructed on the law of manslaughter and defined sudden passion and adequate cause. The deletion of the defensive issue of sudden passion from the paragraph on murder and its placement only in the paragraph on voluntary manslaughter was found to be error which precipitated a denial of due process. *Cobarrubio,* 675 S.W.2d at 752.

Here, the charge provided:

[I]f you believe from the evidence beyond a reasonable doubt that the defendant, Howard Birdwell, on or about the 26th day of July, 1985, in the County of Bowie and State of Texas ... did unlawfully then and there intentionally and knowingly cause the death of an individual, William Gary Birdwell, by shooting him with a firearm, you will find the defendant guilty of the offense of murder and so say by your verdict; but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of murder and proceed to consider whether this defendant is guilty of voluntary manslaughter.

In the charge the trial court then went on to address the law governing voluntary manslaughter and gave the definitions of sudden passion and adequate cause. The charge as given contains the same error found in the *Cobarrubio* charge, assuming that the issue of sudden passion was present in this case.

■ The record contains no evidence that Birdwell was acting under the influence of sudden passion when he killed the victim. When the evidence raises the issue of sudden passion, its negation becomes an implied element of murder. *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App. 1985). However, until sudden passion is raised, its absence does not become an element of murder. *Bradley,* 688 S.W.2d at 851.

The charge should not have included voluntary manslaughter, because there is no evidence of sudden passion to support the submission of voluntary manslaughter to the jury. Birdwell argues that the State's failure to object to the inclusion of voluntary manslaughter in the charge when the charge was given waives any complaint the State may have on appeal concerning the sufficiency of the evidence to establish the elements of voluntary manslaughter, citing *Bradley*, 688 S.W.2d at 853. He apparently reasons that the State is thus estopped from arguing on appeal that there is no evidence of sudden passion. In *Bradley*, the appellant was convicted of voluntary manslaughter, although he timely objected at trial to the inclusion of voluntary manslaughter in the charge because it was not raised by the evidence. At the conclusion of its opinion in *Bradley*, the Court added, as dicta:

> Failure to object to the charge when given on the ground that the evidence does not support it would signal acquiescence on the part of the accused in the trial court's judgment that sudden passion was raised.

> By invoking the benefit of the lesser included offense charge at trial in not objecting to its submission to the jury, an accused will be estopped from then complaining on appeal that the evidence failed to establish all the elements of the offense.

*Bradley*, 688 S.W.2d at 853 (footnote omitted).

■ *Bradley* can easily be distinguished. Birdwell was convicted of murder, not voluntary manslaughter, and his objection to the charge at trial was that it improperly instructed the jury on the State's burden of negating sudden passion or adequate cause, rather than that the charge on voluntary manslaughter was not supported by the evidence. Here, it would be the State, and not Birdwell, who, by failing to object, would be considered to have waived the sufficiency of the evidence to support a charge on voluntary manslaughter. The State, however, had no reason to object to this charge, because it could not have harmed the State. Further, because there is no evidence of sudden passion, none of the material on voluntary manslaughter should have been included in the charge. We conclude that the State, by failing to object to the charge on voluntary manslaughter, has not waived its right on appeal to raise the absence of any evidence of sudden passion.

■ When the error in the charge is the subject of a timely objection in the trial court, then reversal is required if the error is calculated to injure the rights of the defendant. In other words, the case must be reversed if there is some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). The charge as given here should not have contained the material on voluntary manslaughter because it was not supported by the evidence, although that was not the objection made by Birdwell at trial or on appeal. However, Birdwell was not harmed by the inclusion of voluntary manslaughter in the charge. Because he was not entitled to a charge on voluntary manslaughter, the trial court placed him in a better position than the position to which he was actually entitled. *Lamb v. State*, 680 S.W.2d 11, 16 (Tex.Crim.App.1984). We find no reversible error in the trial court's charge.

■ Birdwell also maintains that the trial court erred in overruling his motion for an instructed verdict of acquittal because the State failed to produce sufficient evidence to support a murder conviction. The standard for reviewing the sufficiency of the evidence on appeal in both direct and circumstantial evidence cases is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Christian v. State*, 686 S.W.2d 930, 934 (Tex.Crim.App.1985); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex. Crim.App.1983). If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. *Carlsen*, 654 S.W.2d at 449.

Birdwell's fifteen-year-old daughter testified that in April 1985, the victim, Bird-

well's first cousin, made improper advances toward her when she was at home alone. Birdwell learned of this incident in late June or early July.

In the afternoon of July 26, 1985, Birdwell and a friend, David Aydelott, went to the victim's mother's house. Birdwell testified that their purpose in going to see the victim was to talk to him in order to straighten things out about the incident involving Birdwell's daughter and to tell the victim to stay away from Birdwell's family. Birdwell and Aydelott picked up the victim, and all three then drove to Birdwell's house. Aydelott left, and Birdwell and the victim went into the house to talk.

Birdwell testified that he told the victim that he knew what he had done to his daughter and to stay away from his family. He said that the victim denied any knowledge of the incident and became angry. Birdwell claimed that the victim grabbed a rifle that was next to the chair he was sitting in and pointed it at Birdwell, who hit the victim on the head with a pistol, which he had earlier stuck in his waistband, to get the victim to drop the rifle. The pistol broke. The two men then struggled over the rifle and during the struggle, the rifle went off, fatally wounding the victim. Birdwell contended that the shooting was an accident, although he also testified that he was trying to keep the victim from killing him. Birdwell testified that he was afraid of the victim, particularly since the victim had said he was going to kill him earlier that week.

The autopsy report concludes that the victim was killed by a distant gunshot wound, based on the absence of gunshot residue on the skin or clothing of the victim. The autopsy report also shows that the victim had received a number of blows to the head shortly before his death, and that the victim had defensive wounds on his forearms and hands. A police officer testified that photographs taken of the scene of the shooting do not indicate that a struggle took place. We find sufficient evidence to support Birdwell's conviction for murder.

We affirm the trial court's judgment.